Case No. 23-16135

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

JOSEPH CUVIELLO,

*Plaintiff-Appellant*

v.

CITY OF BELMONT, et al.,

*Defendants-Appellees*

---

On Appeal From:

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
Case No. 3:23-CV-00029 LB
Honorable Laurel Beeler

---

## APPELLANT'S OPENING BRIEF

---

JOSEPH P. CUVIELLO
15 Wakefield Court
Belmont, CA 94002
Telephone: (650) 315-3776
pcuvie@gmail.com

Plaintiff In Pro Se

# TABLE OF CONTENTS

Page

I.      INTRODUCTION……………………………………...…………....1

II.     STATEMENT OF JURISDICTION…………………………………...2

III.    ISSUES PRESENTED……………………………………….............2

IV.     STATEMENT OF THE CASE……………………………………...3

    1.  Criticism of Defendants Open Space Management…………………...6

    2.  California Public Records Act (CPRA) Requests………………….....8

    3.  The Months Just Prior to the 2022 Belmont City Election……………...9


V.      STANDARD OF REVIEW…………………………………………..11

    A.      Documents Filed Pro Se Are To Be Liberally Construed…………..11

    B.      Standard of Review for Denial of a Preliminary Injunction………..12

VI.     LEGAL ARGUMENT…………………………………………..12

    A.      Plaintiff's Request for a Preliminary Injunction Should
        Have Been Granted……………………………………...……..12

    B.      Plaintiff's Volunteerism is a Property and Liberty Interest
        Protected by the Fourteenth Amendment…………..……………..18


        1.      Plaintiff Has a Right to Volunteer Pursuant to State
           Law…………………………………………..……..20

        2.      Plaintiff Has a Right to Volunteer Pursuant to Municipal
           Law …………………………………………………..21

        3.      Plaintiff Has a Protectible Liberty Interest in His

        Volunteerism……………………………………………………..23

C.      Defendants Violated Plaintiff's Right To Due Process……………23

D.      Plaintiff's Removal Activity Constitutes Protected Free
       Speech Under the First Amendment and California
       Constitution…………………………………………………………..27

       1.  Plaintiff's Speech Is On a Matter of Public Concern…..………28

       2.  Plaintiff's Speech Occurs In A Public Forum……………...…..29

       3.  The Combination of Plaintiff's Volunteer Flyers, Signs
          and Conduct Constitutes Speech……………………………...…..30

       4.  California's Constitution Provides Broader Protection
          For Speech…………………………………………………….…..37

       5.  Plaintiff's Removal Conduct is Constitutionally
          Protected Expressive Conduct…………………………………40

          a.  The City of Belmont's General Plan Outlines
              Removing Invasive Species is Conduct Expressive
              of Environmental Protection…………………………..………47

       6.    California Courts also Recognize Conduct as Speech………..48

E.      Plaintiff's Constitutionally Protected Rights Include
       a First Amendment Right to Acquire and gather Information
       and a Fourteenth Amendment Right of Liberty to
       Acquire Knowledge…………………………………..………51

F.      Protection of Plaintiff's Information Gathering is also
       Provided by California's Liberty of Speech Clause………………54

G.      Defendant Shearer's Prohibition on Plaintiff's Free
       Speech Activity is Unconstitutional………………………………55

          a.  Time, Place and Manner Analysis………………….....56

b. The *O'Brien* Analysis………………………………….…..60

VII.   CONCLUSION………………………………………………..63

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*ACLU v. City of Las Vegas*
333 F.3d 1092 (9th Cir. 2003)……………………………………….………30

*All. for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011)……………………………...………...….13, 15

*Allen v. City of Beverly Hills*
911 F.2d 367 (9th Cir. 1990)…………………………………..………19, 22

*Anderson v. City Of Hermosa Beach*
621 F.3d 1051 (9th Cir.2010)…………………………...………..…42, 46

*Armstrong v. Reynolds*
22 F. 4th 1058 (9th Cir. 2022)……………………………………..……….19, 22

*Arizona Dream Act Coalition v. Brewer*
757 F. 3d 1053 (9th Cir. 2014)…………………………………...…….15

*Bartnicki v. Vopper*
532 U.S. 514 (2001)…………………………………………………51

*Board. Of Regents of State Colleges. V. Roth*
408 U.S. 564 (1972)…………………………………………..……..18, 23, 51

*Berger v. City of Seattle*
569 F.3d 1029 (9th Cir. 2009)………………………..……………..56, 58

*Branzburg v. Hayes*
408 US 665 (1972)………………………………………..……..…..51

*Brown v. Louisiana*
383 US 131, 141-42 (1966)…………………………………….……………43

*City of Lakewood v. Plain Dealer Publ'g Co.*
486 U.S. 750 (1988)……………………………………………………………58

*Clark v. Community for Creative Non-Violence*
468 US 288, 293 (1984)……………………………………..…………41

*Comite de Jornaleros v. City of Redondo Beach*
657 F. 3d 936 (9th Cir. 2011)………………………………....56, 60

*Connick v. Meyer*
461 U.S. 138 (1983)………………………………..………………29, 53

*County of Sacramento v. Lewis*
523 U.S. 833 (1998)………………………………………..………..24

*Cuviello v. City of Vallejo*
944 F. 3d 816 (9th Cir. 2019)………………………………....38, 56

*Doe v. Harris*
772 F. 3d 563 (9th Cir. 2014)……………………………..……..12, 14, 26, 58

*Dulaney v. Municipal Court*
520 P. 2d 1 (1974)……………………………………………..………..56

*Edenfeld v. Fane*
507 U.S. 761 (1993)…………………………………………..…..58

*Edge v. City of Everett*
929 F. 3d 657 (9th Cir. 2019)……………………………..…………41

*Elrod v. Burns*
427 U.S. 347 (1976)………………………………………………………15

*Erickson v. Pardus*
127 S.Ct. 2197 (2007)……………………………………………………11

*Estelle v. Gamble*

429 U.S. 97 (1976)……………………………………………………..……11

*Fort Lauderdale Food v. City of Ft. Lauderdale*
901 F. 3d 1235 (11th Cir. 2018)………………………….………......42, 40, 43

*Franchise Tax Bd. of California v. Hyatt*
139 S. Ct. 1485 (2019)……………………………………………..………19, 37

*Fuentes v. Shevin*
407 U.S. 67 (1972)………………………………………….……..26

*Galvin v. Hay*
361 F.3d 1134 (9th Cir. 2004)………………………………………………….52

*Garrison v. Louisiana*
379 U.S 64 (1964)……………………………………………….……..52

*Gerhart v. Lake County, Mont.*
637 F. 3d 1013 (9th Cir. 2011)………………………………….……..18, 19

*Gitlow v. New York*
268 U.S. 652 (1925)……………………………………………..……..51

*Grossman v. City of Portland*
33 F.3d 1200 (9th Cir. 1994)……………………………………………….56

*Hamdi v. Rumsfeld*
542 US 507 (2004)…………………………………………………....24, 26

*Hartranft v. Encore Capital Group, Inc.*
543 F. Supp. 3d 893 (2021)……………………………………..……………19, 37

*Hewitt v. Joyner*
940 F.3d 1385 (9th Cir. 1991)………………………………………………….38

*Holloman ex rel. Holloman v. Harland*
370 F. 3d 1252 (11th Cir. 2004)……………………………………………….42

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*
515 US 557 (1995)………………………………………………36, 39, 42, 43

vi

*Hyland v. Wonder*
972 F. 2d 1129 (9th Cir. 1992)……………………………………….……….19, 22

*John Doe No. 1 v. Reed*
130 S.Ct. 2811 (2010)…………………………………………………….…..43

*Kuba v. 1-A Agricultural Association*
387 F.3d 850 (9th Cir. 2004)……………………………………….……..56

*Leigh v. Salazar*
677 F. 3d 892 (9th Cir. 2012)……………………………………………..51

*Leiva-Perez v. Holder*
640 F.3d 962 (9th Cir. 2011)………………………………………...……….12

*Long Beach Area Peace Network v. City Of Long Beach*
574 F.3d 1011 (9th Cir. 2009)……………………………………………30, 53

*Mathews v. Eldridge*
424 U.S. 319 (1976)………………………………………………...……..24

*McCullen v. Coakley*
134 S. Ct. 2518 (2014)…………………………………………………..…..29

*Melendres v. Arpaio*
695 F.3d 990 (9th Cir. 2012)……………………………………...…………14,17

*Mullane v. Central Hanover Bank & Trust Co.*
339 US 306 (1950)…………………………………………………………….24

*NAACP v. Claiborne Hardware Co.*
458 U.S. 886 (1982)………………………………………………...……...52

*New York Times Co v. Sullivan*
367 U.S. 254 (1964)………………………………………………...………..52

*Nunez v. Davis*
169 F. 3d 1222 (9th Cir.1999)…………………………………………...46, 46

*Pacific Dawn LLC v. Pritzker*
831 F. 3d 1166 (9th Cir. 2016)……………………………………………………19

*Perry v. Sindermann*
408 U.S. 593 (1972)……………………………………………….………13, 23

*Perry Ed. Assn. v. Perry Local Educators' Assn.*
460 US 37 (1983)………………………………………………………...…….30

*Regents Of Univ. California v. Us Homeland Sec.*
908 F. 3d 476 (9th Cir. 2018)……………………………………….18, 23, 24

*Riley's American Heritage Farms v. Elsasser*
32 F. 4th 707 (9th Cir. 2022)……………………………………....…13, 14, 17, 26

*Rivero v. City & County of San Francisco*
316 F. 3d 857 (9th Cir. 2002)……………………………………..…..13,14,15

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*
547 US 47 (2006)……………………………………………………...…46

*Sammartano v. First Judicial Dist. Court In and For the County of Carson City*
303 F.3d 959 (9th Cir. 2002)…………………………………..…………….…17

*Schenck v. Pro-Choice Network of Western NY*
519 US 357 (1997)…………………………………………………….……..29

*Sorrell v. IMS Health Inc.*
131 S.Ct. 2653 (2011)……………………………………………………51, 52

*Snyder v. Phelps*
131 S.Ct. 1207 (2011)…………………………………………………..28, 29, 52

*Spence v. Washington*
418 US 405 (1974)………………………………………………..41, 42, 43, 46, 62

*Stromberg v. California*
283 U.S. 359 (1931)………………………………………………...…..51

*Texas v. Johnson*

491 U.S. 397 (1989)……………………………………..…... 41, 46, 61, 62

*Thalheimer v. City of San Diego*
645 F.3d 1109 (9th Cir. 2011)………………………………………..12

*United States v. O'Brien*
391 U.S. 367 (1968)……………………………………..…41, 61

*Ward v. Rock Against Racism*
491 U.S. 781 (1989)…………………………………….…56, 60

*Wedges/Ledges of Cal., In., v. City of Phoenix*
24 F.3d 56 (9th Cir. 1994)……………………………………………18

*Winter v. National Res, Def, Council, Inc.*
129 S.Ct. 365 (2008)……………………………………..…………12, 14

**STATE CASES**

*Beeman v. Anthem Prescription Management, LLC.*
58 Cal.4th 329 (2013)……………………………………………..…38

*Center For Bio-Ethical Reform, Inc. v. The Irvine Co., LLC*
37 Cal. App. 5th 97 (2019)…………………………………………...39, 40, 49, 55

*Fashion Valley Mall, LLC v. National Labor Relations Board*
42 Cal. 4th 850, 857 (2007)…………………………………………….....35

*Favila v. Katten Muchin Rosenman LLP*
188 Cal. App. 4th 189, 216 (2010)………………………………..…39

*Gerawan Farming, Inc. v. Lyons*
24 Cal.4th 468 (2000)……………………………………………..38

*Griset v. Fair Political Practices Comm.*
8 Cal.4th 851, 866 (1994)……………………………………………37

*Kasky v. Nike, Inc.*
45 P. 3d 243 (2002)……………………………………………….....32

*L.A. Alliance for Survival v. City of Los Angeles*
993 P.2d 334 (Cal. 2000)……………………………………………………37, 49, 53

*Landrum v. Superior Court*
30 Cal.3d 1 (1981)……………………………………………………………..…….39

*Orange Citizens for Parks & Recreation v. Superior Court*
2 Cal.5th 141 (2016)……………………………………………………….…..21, 48

*People v. Teresinski*
30 Cal.3d 822 (1982)………………………………………………….....49

*Spiritual Psychic Science Church v. City of Azusa*
39 Cal.3d 501 (1985)……………………………………………...………32

## STATUTES

Federal Statutes
    28 U.S.C. § 1292(a)(1)……………………………………………2
    28 U.S.C § 1331………………………………………………..2
    28 U.S.C § 1343………………………………………………..2
    28 U.S.C § 1367………………………………………………..2
    42 U.S.C § 1983…………………………………………….....2


Federal Rules of Appellate Procedure
    Rule 4(a)(1)(A)…………………………………………………2

California Government Code
    § 56302(e)……………………………………………….…...20
    § 65560-65567..………………………………………………20, 21
    § 65860…………………………………………………….....21

California Code of Civil Procedure
    § 425.16………………………………………………38, 39, 49, 55

Municipal Codes

    Belmont, California

General Plan……………………………………………….....passim

# I. INTRODUCTION

This appeal is regarding whether the district court should have issued a preliminary injunction after a prima facie finding Defendant Shearer cancelled Plaintiff's volunteer invasive plant removal program in the open space and along public streets in retaliation for Plaintiff exercising his First Amendment free speech rights. It is also regarding whether the cancellation: (1) violated Plaintiff's constitutionally-protected right to free speech under the Federal and State Constitutions; (2) violated Plaintiff's constitutionally-protected right to due process; and (3) violated Plaintiff's Fourteenth Amendment liberty interest.

On November 21, 2022, after Plaintiff had, for two and a half years, put in hundreds of hours removing invasive plants from the City's open space and nearby public streets Defendant Belmont Parks And Recreation Director Brigitte Shearer, out of the blue, cancelled Plaintiff's volunteer program without any explanation, even though Plaintiff requested one. The only explanation Plaintiff received was over three months later, in the course of this litigation, on March 2, 2023, in Defendant Shearer's Declaration submitted in support of Defendants Opposition to Plaintiff's Ex Parte Motion for Temporary Restraining Order and Order To Show Cause RE Preliminary Injunction; filed on February 23, 2023.

Although the district court found Plaintiff made a prima facie case for retaliation against Defendant Shearer, it did not grant Plaintiff's motion for preliminary injunction.

The court also determined: (1) Plaintiff's volunteerism is not protected speech because he did not establish he intended his volunteerism to be communicative and would be understood by the passersby to be communicative; and (2) Plaintiff has no property or liberty interest in his volunteerism and therefore no due process claim.

For the reasons outlined below Plaintiff respectfully requests the Court overturn the district court's order denying his motion for preliminary injunction.

## II.  STATEMENT OF JURISDICTION

The district court had federal question jurisdiction over plaintiff's Section 1983 claim under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over plaintiff's state-law claims under 28 U.S.C. § 1367. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1). The district court entered its Order denying Plaintiff's motion for a preliminary injunction on July 31, 2023. Plaintiff filed a timely notice of appeal on August 28, 2023. *See* Fed. R. of App. Proc. 4(a)(1)(A).

## III.  ISSUES PRESENTED

Plaintiff contends:

1.     The district court erred by not issuing an injunction after finding Defendant Shearer cancelled his volunteer program in retaliation for his speech.

2.     His invasive plant removal conduct in conjunction with his signs, in a public forum, is constitutionally-protected speech under the First Amendment and California's Liberty of Speech Clause, Article 1, Section 2 of the California Constitution.

3.     His invasive plant removal conduct by itself, in a public forum, is constitutionally-protected expressive conduct under the First Amendment and California's Liberty of Speech Clause, Article 1, Section 2 of the California Constitution.

4.     His volunteerism is a protected liberty interest because it stems from state law and the City of Belmont's municipal law, making it a constitutional entitlement giving Plaintiff a right to due process.

## IV.  STATEMENT OF THE CASE

Plaintiff Joseph Patrick Cuviello lives in Belmont, California and is a long-time animal rights/environmental activist whose advocacy includes the protection of wildlife and their natural open space habitats, by educating the public and City officials about the need for such protection. 3-ER-247; ¶¶2-3. Plaintiff is known locally as Pat Cuviello. 3-ER-247; ¶2.

Plaintiff's environmental activism includes hands-on protection of the environment by removing invasive plant species, such as French broom and pampas grass. 3-ER-247;¶4, 308.

In May 2020, Plaintiff Cuviello, and his wife Deniz Bolbol, co-founded a local environmental group "Friends Of Waterdog," (hereinafter "FOW"), for the purpose of volunteering to restore habitat in the local open space known as Waterdog Open Space, (hereinafter "Waterdog"), by removing invasives - mostly Broom. For two and a half years Plaintiff Cuviello, along with a few other volunteers, through FOW, has put in approximately 400 volunteer hours to restore habitat in the local open space, with nearly 370 hours put in by Plaintiff. 3-ER-247; ¶5. The environmental destruction and wildfire threat caused by invasives, especially Broom, has long been known by scientists and government entities, including the City of Belmont, and is a matter of growing public concern. 3-ER-352, 355, 360, 363, 385, 386, 388, 390;¶7, 393;4(b), 396, 397. 465;Action 5.2-2a.

Plaintiff's volunteer removal opportunity provides a service to the community by restoring habitat to protect and strengthen the environment, and lessen the threat of wildfire, which "enhances the quality of life for the community." 3-ER-470. It is also aligned with the City of Belmont's General Plan, which mandates removing invasive species to preserve and maintain the open space. 3-ER-465;Action 5.2-2a.

Plaintiff's personal benefits from volunteering include: (1) making a contribution to the community; (2) helping to protect the environment and biodiversity; (3) receiving valuable first-hand experience and knowledge regarding the level of invasive infestation in Waterdog, effects of restoring habitat by removing invasives and ability to identify the most effective means of removing invasive plant species, e.g., for French Broom, cut and peel compared to pulling out by the roots or cutting the plant in bloom; (4) sharing his obtained first-hand knowledge and experience with other groups, individuals and government agencies; (5) gaining knowledge and experience that enhances Plaintiff's free speech on this important issue of public concern; (6) gaining credibility so private citizens allow Plaintiff to remove Broom on their property; (7) gaining personal knowledge of the effects of Defendants hands-off management of Waterdog by accessing off-trail areas thereby being able to discover illegally built trails and hang-out spots; and (8) gaining community standing and elevated status. 3-ER-247; ¶6.

Since September of 2019 Plaintiff has been a very vocal very public critic of Defendants' management of Waterdog, which includes allowing mountain bikers to (1) cause significant trail erosion, (2) access narrow single-track trails in contradiction of the current Master Plan, (3) ride at speeds that exceed 10mph and reach up to 30mph (4) ride off-trail, (5) cut unauthorized trials, including through

sensitive riparian habitat (6) create technical riding features such as jumps and berms, (7) spray poisons, including Round-Up, in the open space to kill native poison oak plants, (8) kill wildlife by running them over on the trails including, lizards, rabbits, and woodrats, (9) mine rocks from the hillsides to "armor" trails for riding convenience and (10) ride after nighttime closure (hereinafter "Night Riding"). 3-ER-248; ¶¶7, 8 and 11.

Plaintiff and his wife have called the police on Night Riders many times in the last few years, and have repeatedly asked Defendant Shearer to do something to prevent "Night Riding" but no serious preventative measures were ever taken. 3-ER-248; ¶9.

1. **Criticism of Defendants Open Space Management**

Plaintiff documented the mountain biking impact and submitted a REPORT: Environmental Impacts of Mountain Biking On Water Dog Open Space," to Belmont City Council members, Defendant Shearer and Parks and Rec Commissioners. The REPORT squarely laid the blame on the City of Belmont. Not one elected or appointed official acknowledged or responded to the "REPORT." Plaintiff also posted the "REPORT" on FOW's FaceBook page and the neighborhood social media site NextDoor. Plaintiff received many responses from mountain bikers on NextDoor. 3-ER-249; ¶13.

During the City of Belmont's process of drafting a new "Parks, Recreation, and Open Space Master Plan," (hereinafter "PROS") which began in or about October 2020 and is ongoing to date, Plaintiff attended nearly all, if not all, the PROS Advisory Committee and Parks and Rec Commission meetings. 3-ER-249; ¶¶13 and 14.

Plaintiff spoke publicly at the meetings and was openly critical of the process itself, the interpretation of the PROS poll the City of Belmont commissioned, the lack of environmental concern from the Parks and Rec Commissioners and the findings and recommendations of WRA, the environmental consulting firm the City of Belmont hired to work on the PROS process. 3-ER-249; ¶15.

During this time Plaintiff's group FOW commissioned an Environmental Assessment (EA) of Waterdog because the City had never commissioned one or expressed plans to commission one. After Plaintiff submitted his EA to the City they decided to commission one of their own. 3-ER-249; ¶14.

On July 12, 2022, the City Council was expected to adopt the PROS Plan, approved by the Parks and Recreation Commission. 3-ER-405;9A. Plaintiff's wife Deniz Bolbol hired an environmental law firm - Greenfire Law - to review the PROS Plan. After review, Greenfire sent a comment letter to the City Council informing them if they approved the PROS Plan without completing an

environmental review, pursuant to the California Environmental Quality Act (CEQA), Ms. Bolbol "will be forced to commence litigation to compel the City to perform its required duties under CEQA." 2-ER-229;¶17, 232-234. The City Council tabled the PROS Plan, and in October 2022 adopted a Resolution to do an initial study (IS) to determine whether and to what extent further environmental review is required under CEQA. 3-ER-413-17.

## 2. California Public Records Act (CPRA) Requests

Both Plaintiff and his wife have submitted a number of California Public Records Act (CPRA) requests pertaining to the City of Belmont's actions regarding management of the Open Space. 3-ER-250;¶17, 2-ER-229;¶15.

On June 9, 2021 Ms. Bolbol filed a lawsuit against the City for violating the California Public Records Act. 2-ER-229;¶16.

On August 9, 2022, a San Mateo County Grand Jury issued a report on how well San Mateo County cities respond to Public Records Act (CPRA) requests. The Grand Jury report outlined the City of Belmont as the most deficient of the 20 San Mateo County cities. 3-ER-419-454.

Just over a month later Plaintiff's wife Deniz Bolbol settled her CPRA lawsuit with the City of Belmont, which mandated the City of Belmont pay approximately $56,000 for Ms. Bolbol's attorney fees and to confirm the City

would not require Ms. Bolbol to pay to view public documents. 2-ER-230;¶18, 236-244.

### 3. The Months Just Prior to the 2022 Belmont City Election

Plaintiff publicly participated in conversations on the social media site Nextdoor regarding the different Belmont city council and mayoral candidates' positions on protecting the Waterdog open space – including protection from mountain biking damage. Plaintiff was openly critical of all the candidates but gave support for candidate Warren Lieberman, who expressed his support for closing some trails to mountain bikers, but was not elected. 3-ER-251;¶22.

Plaintiff also posted on Nextdoor criticizing the City Council's mismanagement of taxpayer dollars for spending almost $56,000 in attorney fees fighting a simple CPRA request from Plaintiff's wife, Deniz Bolbol. Plaintiff highlighted the August 9, 2022, San Mateo County Grand Jury report finding the City of Belmont the most deficient of the 20 San Mateo County cities in their response to Public Records Act requests. Plaintiff called out council members running for election and highlighted reasons not to vote for them, including current mayor Julia Mates. 3-ER-251;¶23.

On October 17, 2022 Plaintiff sent Defendant Parks and Recreation Director Brigitte Shearer an email requesting a status update of his January 7, 2022 request to block an illegal biker fall line off Hastings Drive and again asked for permission

to remove the invasive plant Echium Candicans, as Plaintiff had requested nine months earlier. 3-ER-274. Over one month later on November 21, 2022, less than two weeks *after* the election, Defendant Shearer responded and, out of the blue without any previous expression of dissatisfaction with Plaintiff's volunteer program, told Plaintiff to not remove any more plants, and never addressed the illegal cut-through fall line off Hastings Drive. 3-ER-273. Plaintiff requested an explanation for the suspension of his program, which to date has never been personally answered, and requested confirmation that "hold off on any plant removal" included French Broom and Pampas Grass as well. 3-ER-251;¶24, 273

After receiving no response from Defendant Shearer, on December 1, 2022 Plaintiff sent an email to all City council members, City Attorney Scott Rennie and Defendant Shearer informing them that the suspension of Friends of Waterdog's volunteer program was a violation Plaintiff's First Amendment free speech right and a violation of Belmont's General Plan. 3-ER-277-78. Four days later, on December 5, 2022, Plaintiff sent the same email to Afshin Oskoui, the City Manager. Plaintiff received no response from any of the recipients and interpreted the non-responses as confirmation his volunteer removal program was cancelled without explanation. 3-ER-252;¶25.

After informing City officials of Shearer's cancellation of Plaintiff's volunteer program, on December 6, 2022, over two weeks after Plaintiff requested

confirmation from Shearer he was not allowed to remove French Broom and

Pampas Grass, Defendant Shearer responded affirmatively that Plaintiff was not to

remove any invasive plants from the Open Space. 3-ER-251;¶24, 273.

Plaintiff filed this lawsuit on January 4, 2023 and amended his Complaint on

January 24, 2024. 3-ER-311-47. On February 23, 2023 Plaintiff filed a Motion for

Temporary Restraining Order (TRO) and Order To Show Cause RE Preliminary

Injunction. 2-ER-190-225. On February 28, 2023 the district court issued an Order

denying Plaintiff's motion for TRO. 1-ER-28-32. On March 2, 2023 Defendants

filed a Motion To Dismiss. 2-ER-157-89. On July 31, 2023 the district court issued

an Order denying Plaintiff motion for a preliminary injunction and granting

Defendants' motion to dismiss in part. 1-ER-2-27. The Order found plaintiff made

a prima facie case of retaliation against Defendant Shearer. 1-ER-3. Plaintiff timely

filed this appeal on August 25, 2023.

## V.  STANDARD OF REVIEW

### A. Documents Filed Pro Se are to be Liberally Construed

"A document filed *pro se* is 'to be liberally construed...' *Erickson v. Pardus*,

127 S.Ct. 2197, 2200 (2007)(*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

*See also* Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do

substantial justice"). *Id.*

## B. Standard of Review for Denial of a Preliminary Injunction

The Court "review[s] a district court's decision to grant or deny a preliminary injunction for abuse of discretion. We review the district court's legal conclusions de novo, and the district court's findings of fact for clear error. When reviewing under this standard, we will not reverse the district court's decision simply because [we] would have arrived at a different result if [we] had applied the law to the facts of the case."

*Doe v. Harris*, 772 F. 3d 563, 570 (9th Cir. 2014)(*citing Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011)).

## VI. LEGAL ARGUMENT

### A. Plaintiff's Request for a Preliminary Injunction Should Have Been Granted

"The standard for issuing a preliminary injunction is well established: A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

*Id.,* (*citing Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)).

The court may "balance the elements" of this test, "so long as a certain threshold showing is made on each factor." *Leiva-Perez v. Holder,* 640 F.3d 962, 966 (9th Cir. 2011). Thus, for example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the

plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks omitted).

The Ninth Circuit Court recognizes that under the First Amendment a volunteer opportunity is a "valuable government benefit" and "a government entity may not deny a person a 'valuable governmental benefit' in retaliation for that person's exercise of First Amendment rights." *Rivero v. City & County of San Francisco*, 316 F. 3d 857, 863 (9th Cir. 2002)(*citing Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

Although, the district court found Plaintiff established a prima facie case that Defendant Shearer cancelled Plaintiff's volunteer program as retaliation for his speech (1-ER-3:3-6) it also denied Plaintiff's injunction request based on its determination Plaintiff did "not establish a likelihood of success on the merits." 1-ER-26;17-27;12.

The court in *Riley's American Heritage Farms v. Elsasser*, 32 F. 4th 707, 716 (9th Cir. 2022) determined, with regards to issuing an injunction in a retaliation case, that if there is "genuine issue of material fact regarding whether the [] plaintiffs have established a First Amendment violation," and "there is a genuine issue of material fact that the violation is ongoing" the injunction should issue *Id*. at 731. Plaintiff's prima facie showing of liability against Defendant

Shearer establishes, at the very least, a genuine issue of material fact of a First Amendment violation. Plaintiff also has established that there is an ongoing violation, as his volunteer program is still cancelled.

Plaintiff has met the required elements for injunctive relief: "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Doe v. Harris*, 772 F. 3d at 570 (*citing Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. at 20)).

The district court's determination that Plaintiff has made a prima facie showing of retaliation should satisfy the first prong that he is likely to succeed on the merits.

Regarding the second prong, "evidence of an ongoing constitutional violation (i.e., a policy or practice) satisfies the second element of the injunctive relief test." *Riley's*., at 731. The fact that Plaintiff's volunteer program is still cancelled establishes an ongoing policy or practice to penalize plaintiff for his speech. As long as Plaintiff's program remains cancelled he is continually being penalized for his speech, and it is a continuing violation of his First Amendment right to be free from retaliation for his speech. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Id*., (*citing Melendres v.*

*Arpaio,* 695 F.3d 990, 1002 (9ᵗʰ Cir. 2012)(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).[1]

Irreparable harm is harm for which there is no adequate legal remedy, such as an award of damages. *Arizona Dream Act Coalition v. Brewer*, 757 F. 3d 1053, 1068 (9th Cir. 2014)(citation omitted). "[I]ntangible injuries [may] qualify as irreparable harm." *Id.*

"Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable." *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1135 (9th Cir. 2011)(citations omitted).

Plaintiff's harm is from the environmental injury that occurs when invasive plants are left to propagate and infest the open space. This and the time and money

---

[1] The district court presented Plaintiff's irreparable harm as "[Plaintiff] was concerned with the threat to stopping the appropriate removal of invasive plants at the peak season for removing them. While a delay in removing plants may be harm, it is hard to see how it is irreparable." 1-ER-27;4-5. Plaintiff filed for a Temporary Restraining Order on February 23, 2023 for the purpose of immediate relief to remove French Broom, for which Spring is the easiest and most effective time of year for removal; during bloom and before seeding. 3-ER-254;¶34-35. However, not only can French broom be removed any time during the year it is just one of the invasive plants Plaintiff removes, and his request for a preliminary injunction was to also be able to remove the other invasives including pampas grass, poison hemlock and fennel, which he could have been doing in the Summer, and now as well. 3-ER-247;¶4, 308;#5.

Plaintiff has spent is intangible and Plaintiff believes the harm to him is irreparable.

Regarding the hardship prong, Defendants' argument an injunction will deny them the authority to control its property is without merit. 2-ER-151;7-18. Plaintiff's invasive plant removal is wholly aligned with the City of Belmont's General Plan, which the City is mandated to carry out and implement by state law, as explained in detail in Section B(1) and (2) below. There can be no hardship for Defendant Shearer in an injunction that merely allows Plaintiff to do what the State and City's General Plan mandate. All an injunction will do is recognize the constitutional restraints on Defendant Shearer. It does nothing to subvert the City's authority, legitimately exercised, over any volunteer.

Ironically Defendants exhibit very little concern or control over Waterdog currently and historically. But for some reason when it comes to Plaintiff's volunteerism they want absolute authority to control, meanwhile unauthorized trails remain open, new illegal trails are being constructed, and night mountain biking persists. 3-ER-248;¶¶8-9, 253;¶30, 254;31, 299, 301.[2]

---

[2] 3-ER- 299 and 301 are a true and correct copies of the City of Belmont's "Water Dog Lake Open Space Trail Map." ER 301 depicts both the official trail system and unauthorized trails that were illegally built and which the City allows continued use. 3-ER-257;¶58.

The balance of hardships tips in plaintiff's favor as there is no hardship for Defendants in reinstating Plaintiff's volunteer program as: (1) there was no hardship before the program was cancelled; (2) Plaintiff's program is aligned with the City's General Plan Goals, Policies and Actions regarding management of the open space (3-ER-352, 465;Action 5.2-2a); and (3) Defendant Shearer recognized Plaintiff's removal activities are "improving" the open space. 3-ER-308.

"Finally, 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Riley's*., at 731*, (citing Melendres* at 1002)(quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002)). The public interest does not favor rewarding Defendants for retaliating against Plaintiff without any consequences, which is what allowing the cancellation to continue unabated does.

Additionally, according to the City of Belmont's own General Plan invasive plant removal is in the public interest, as it helps "preserve and maintain" the open space. (3-ER-352, 465;Action 5.2-2a). Other public agencies also recognize invasive removal is needed to protect the environment. 3-ER-354, 360, 383, 388, 390; ¶7, 393;4(b), 396-97. As well, invasive removal helps mitigate wildfire threat to the community, which is also in the public interest. 3-ER-388. Cancelling Plaintiff's removal program was counter to the public interest.

For the foregoing reasons, Plaintiff respectfully ask the Court to overturn the district court's Order denying Plaintiff's request for preliminary injunctive relief.

## B. Plaintiff's Volunteerism is a Property and Liberty Interest Protected By the Fourteenth Amendment

The district court found that Plaintiff's volunteerism was not a protected entitlement subject to constitutional due process. 1-ER-12-15. Plaintiff disagrees and believes his volunteer opportunity isn't just a "valuable government benefit" it is a constitutional entitlement created by statute and therefore a property interest subject to the due process right under the Fourteenth Amendment. Thereby, increasing the importance of issuing a preliminary injunction to protect against the continuing violation of Plaintiff's Fourteenth Amendment right to due process.

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."[3] "[A] property interest must 'stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."[4] "Whether an expectation of entitlement is sufficient to create a property interest 'will depend largely upon the extent to which

---

[3] *Regents Of Univ. California v. Us Homeland Sec*., 908 F. 3d 476, 514 (9th Cir. 2018)(*citing Wedges/Ledges of Cal., In., v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir. 1994)).
[4] *Gerhart v. Lake County, Mont.,* 637 F. 3d 1013, 1019 (9th Cir. 2011)(*citing Bd. Of Regents of State Colls. V. Roth,* 408 U.S. 564, 577 (1972)).

the statute contains mandatory language that restricts the discretion of the [decisionmaker].'" *Armstrong v. Reynolds*, 22 F. 4th 1058, 1072 (9th Cir. 2022)(*citing Allen v. City of Beverly Hills*, 911 F.2d 367, 370 (9th Cir. 1990)).

Unlike the plaintiffs in *Hyland v. Wonder*, 972 F. 2d 1129, 1140 (9th Cir. 1992) and *Gerhart v. Lake County, Mont.*, 637 F. 3d 1013, 1020 (9th Cir. 2011), Plaintiff's volunteer opportunity stems from state law and the City of Belmont's municipal law making it a constitutional entitlement giving Plaintiff a property interest in his volunteer opportunity and thus a right to due process under the Fourteenth Amendment.

Although Plaintiff argued he has an entitlement pursuant to state and municipal law (2-ER-211;23-212;20.) Defendants only opposed his municipal law argument. 2-ER-148-49. The Court should consider Defendants concede Plaintiff has an entitlement pursuant to state law. "[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived." *Hartranft v. Encore Capital Group, Inc.*, 543 F. Supp. 3d 893, 913 (2021). *Id.* at fn. 6. *See also Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1491, fn. 1 (2019), argument deemed waived where party failed to raise it in opposition brief. And *Pacific Dawn LLC v. Pritzker*, 831 F. 3d 1166, 1178, fn. 7 (9th Cir. 2016).

### 1. Plaintiff Has A Right To Volunteer Pursuant to State Law

The City of Belmont is required by State Law (California Government Code (GC) sections 56302(e) and 65560-65567) to adopt an Open Space Element as part of its General Plan. 3-ER-456. The purpose of GC Section 65562 is to: "(a) To assure that cities and counties recognize that open-space land is a limited and valuable resource which must be conserved wherever possible, and (b) to assure that every city and county *will prepare and carry out* open-space plans which… will accomplish the objectives of a comprehensive open-space program." (Emphasis added). 3-ER-459. Section 65564 mandates that "Every local open-space plan shall contain an *action program* consisting of a specific program which the legislative body intends to pursue in *implementing* its open-space plan." (Emphasis added). 3-ER-460.

Accordingly, to "implement" and "carry out" the state law mandate, the City of Belmont adopted "General Plan-Parks, Recreation, and Open Space Element," which includes a "Conservation Element," that contains City Goals, Policies and Actions.[5] Policy 5.2-2 states without qualification, "Involve the public in stewardship of Belmont's open space resources." 3-ER-465;Policy 5.2-1.

---

[5] "The Parks, Recreation, and Open Space Element addresses open space for outdoor recreation, while the Conservation and Safety elements discuss open space for preservation of natural resources and open space for public health and safety, respectively." 3-ER-456.

The mandate of Policy 5.2-2 is to, "[i]nvolve the public in stewardship of Belmont's open space resources." "Action 5.2-2a"[6] is meant to implement this "Policy" and reads in pertinent part, "Develop an active public engagement program for education and involvement in Belmont's open space, and "[e]ncourage volunteers to …remove invasive species." 3-ER-465;Action 5.2-2a.

By specifically choosing to adopt "Action 5.2-2a," the City of Belmont, pursuant to GC Sections 65562(a) and 65564, is mandated to "implement" and "carry out" this "Action," thereby creating a general constitutional entitlement, and municipal general right for the public at large to volunteer to remove invasive species.

### 2. Plaintiff Has a Right to Volunteer Pursuant to Municipal Law

A General Plan is considered "the `constitution for all future developments' within the city or county,"[7] and is "infuse[d]… with the force of law,"[8] and has "statutory intent." 3-ER-456. Once the city has adopted a general plan, City's management of open space must be "compatible with the objectives, policies, general land uses, and programs specified in such a plan." (§ 65860, subd. (a)(ii).)

---

[6] "**Actions** are measures to implement policies, and they may refer to existing programs or call for establishment of new ones." 3-ER-468.
[7] *Orange Citizens for Parks & Recreation v. Superior Court*, 2 Cal.5th 141, 152 (2016).
[8] *Orange Citizens* at 153.

Accordingly, the City of Belmont is legally mandated to enforce General Plan "Action 5.2-2a"; "[e]ncourage volunteers to …remove invasive species." 3-ER-465;Action 5.2-2a. The "statutory intent" of this "Action," strongly implies a corollary right to volunteer to remove invasive species. This "Action," with or without the implications, establishes Plaintiff not only has a constitutional entitlement to remove invasive plants, the City of Belmont has a legal duty to encourage, not discourage, people like Plaintiff to remove invasive plants.

"[I]f the statute sets out conditions under which the benefit *must* be granted…' then the statute creates an entitlement to the benefit sufficient to create a property interest.'" *Armstrong*, 22 F. 4th at 1072, (*citing Allen v. City of Beverly Hills*, 911 F.2d 367 370 (9th Cir. 1990)). "Action 5.2-2a" sets out that the condition under which the benefit must be granted is the person just has to volunteer. 3-ER-254;¶32.

Because, Plaintiff's right to volunteer is derived from "statutory authority" and is therefore "a constitutionally protected property interest."[9]

In addition to the foregoing, Plaintiff had a "mutually explicit understanding" that his volunteer program would be "ongoing," as his volunteer form, submitted in July 2020,[10] establishes. 2-ER-128;¶2, 133. "[A] legitimate

---

[9] *Hyland v. Wonder*, 972 F. 2d 1129,1140 (9th Cir. 1992).
[10] 2-ER-155;¶8.

claim of entitlement may exist where there are "rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to the benefit...." *Regents Of Univ. California v. Us Homeland Sec*., 908 F. 3d 476, 514 (9th Cir. 2018)(*citing Perry v. Snidermann*, 408 U.S. 593, 601 (1972)). Plaintiff never filled out another volunteer form and his volunteerism was "ongoing" for two and a half years.

### 3. Plaintiff Has a Protectable Liberty Interest in His Volunteerism

"[A]cquir[ing[ useful knowledge" is a liberty interest "guaranteed by the Fourteenth Amendment." *Board of Regents of State Colleges v. Roth*, 408 US 564, 572 (1972). The district determined Plaintiff had no protectable liberty interest. 1-ER-15.

Through his removal activity Plaintiff gains useful knowledge. 3-ER-247;¶6, 339;¶97. Importantly it is valuable knowledge Plaintiff is acquiring by providing a community service in a public open space by doing what is mandated by state law and the City of Belmont's General Plan, and is aligned with, and promotes, the City of Belmont's interests and policies.

### C. Defendants Violated Plaintiff's Right To Due Process

Plaintiff has established that his volunteer opportunity is both a property and liberty interest triggering his Fourteenth Amendment right to due process.[11]

Due process protects "the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)(*citations omitted*).

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Hamdi v. Rumsfeld*, 542 US 507, 533 (2004)(*citing Mullane v. Central Hanover Bank & Trust Co.,* 339 US 306, 313 (1950)). "[T]he process due in any given instance is determined by weighing 'the private interest that will be affected by the official action' against the Government's asserted interest, 'including the function involved' and the burdens the Government would face in providing greater process." *Id*. at 529, (*citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

---

[11] "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Regents Of Univ. California v. Us Homeland Sec*., 908 F. 3d 476, 514 (9th Cir. 2018).

Defendant Shearer's cancellation of Plaintiff's volunteer program is clearly in opposition to its interests asserted in its General Plan. However, Plaintiff had to file a lawsuit and motion for a TRO and preliminary injunction, and wait three months after his program was cancelled, before he received an explanation in the form of a declaration submitted by Defendant Shearer. Shearer claimed the City's asserted interest in cancelling his program was unspecified "potential safety issues presented by volunteer activities" for which they needed time to consider any assessment and/or recommendations from consultants. 2-ER-156;¶¶11.

However, "[p]ublic safety'—like 'public interest—is much too broad a concept to serve as an effective constraint on law enforcement decisions that may infringe" constitutional rights. *Doe v. Harris*, 772 F. 3d 563, 580 (9th Cir. 2014). Accordingly, based on Shearer's Declaration Plaintiff filed a California Public Records Act (CPRA) request for all documents relating to the City of Belmont's consultation with an environmental consultant regarding potential safety issues with volunteer removal of non-native plant species and trail maintenance in Waterdog Open Space within the last year. 2-ER-42. Not one of the responsive documents provided by the City remotely mentions anything about a safety assessment or safety in general regarding volunteer activities in Waterdog Open Space, a strong indicator Shearer's declared safety issues were a pretext for retaliation. 2-ER-47-55.

Because Defendant Shearer's declaration is contradicted by her own documents her cancellation of Plaintiff's volunteer program: (1) leaves unknown her true "asserted interest;" and (2) is a strong indicator of an "arbitrary action" and an "exercise of power without any reasonable justification in the service of a legitimate governmental objective."

"It is…fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Hamdi v. Rumsfeld*, 542 US 507, 533 (2004)(*citing Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). In the absence of an injunction Defendant Shearer has been allowed to benefit from retaliating against Plaintiff by not providing him meaningful due process.

Plaintiff has established he is entitled to a preliminary injunction as: (1) he is likely to succeed on his Due Process claim; (2) he is irreparably harmed, as "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'";[12] (3) the balance of equities tips in his favor; and (4) the injunction is in the public interest, as "it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Riley's*., 32 F. 4th at 731.

If the Court agrees Plaintiff has established a due process claim then Plaintiff ask the Court to overturn the district court's denial of Plaintiff's

---

[12] *Riley's*., 32 F. 4th at 731.

preliminary injunction request and remand his due process claim to the district

court for a determination as to what is the proper process due Plaintiff.

### D. Plaintiff's Removal Activity Constitutes Protected Free Speech Under The First Amendment and California Constitution

Plaintiff's speech includes, but is not limited to Facebook, flyers, signage

and invasive plant removal conduct. 3-ER-249;¶13;11-13, 252;¶27. The purpose of

Plaintiff's speech activity is multi-fold: (1) to remove invasives and restore habitat

to conserve the environment; (2) to educate people regarding the value of number

one - before, during and post removal of invasives - to get people, including

government officials, to care enough to address the issue, including by

volunteering with Plaintiff to help remove invasives; (3) to collect information and

gain knowledge regarding removing invasives and its effect on the environment

and wildlife; and (4) to disseminate the information to others to increase the public

understanding on this issue of public concern. 3-ER-247;¶6, 253;¶28, 285, 289,

291, 293, 340;98.

Plaintiff argued in his initial brief that both the combination of his signage

and conduct constitutes protected speech, and his conduct alone constitutes

protected speech. 2-ER-214, 216;15-17.

In their opposition brief, Defendants called the cancellation of Plaintiff's

volunteerism an "incidental restriction[] on Plaintiff's First Amendment freedoms

[] no greater than essential to the furtherance of the interest." 2-ER-147;17-19.

They furthered argued that the cancellation was "extremely narrow" and that "Plaintiff still has full access to the Open Space, can wear whatever protective gear he wants, display whatever signs he wants, and speak to whomever he wants, either in the Open Space or anywhere else, about any issues he would like. He can even still remove invasive plants on private property." 2-ER-147;19-22. Defendants' argument is an acknowledgement that Plaintiff's signs and gear he wears constitutes protected free speech.

Accordingly, the main disagreement between Plaintiff and Defendant regarding Plaintiff's protected speech is whether his removal conduct is protected as: (1) part of his overall speech; and/or (2) expressive conduct on its own. Plaintiff contends it's both.

Defendants, and the district court, only addressed whether Plaintiff's removal conduct alone constitutes speech. 1-ER-3;8-9, 24;16, 25;17 and 2-ER-144-47.

### 1. Plaintiff's Speech Is On a Matter of Public Concern

"Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 131 U.S. S.Ct. 1207, 126 (2011)(citations omitted). Protection of the environment,

including removing invasive species, is a matter of political and community concern, as is evident by (1) CalFire's website, (2) United States Department of Agriculture website, (3) our Governor's Executive Order N-82-20, to combat the climate and biodiversity crisis and (4) the City of Belmont's own General Plan. 3-ER-352, 355, 360, 363, 385, 386, 388, 390;¶7, 393;4(b), 396, 397. 465;Action 5.2-2a.

Speech "on matters of public concern are classic forms of speech that lie at the heart of the First Amendment,"[13] and "[are] entitled to special protection." *Snyder v. Phelps,* 131 S. Ct. 1207, 1215 (2011)(*citing Connick v. Meyers*, 461 U.S. 138, 145 (1983)). "If some part of the communication addresses an issue of public concern, the First Amendment's protections are triggered even though other aspects of the communication do not qualify as a public concern." *Id*., (*citing Connick*, 461 U.S. at 149)). Because Plaintiff's speech is entirely about environmental protection and volunteerism to help protect the environment "First Amendment protections are triggered" and his speech is "entitled to special protection."

## 2.  Plaintiff's Speech Occurs In a Public Forum

Both Plaintiff and Defendants agree the open space is a public forum. Opp. p.7 fn.2. "The ability to restrict speech in public forums, whether traditional public

---

[13] *McCullen v. Coakley*, 134 S. Ct. 2518, 2536 (2014)(*citing Schenck v. Pro-Choice Network of Western NY*, 519 US 357, 377 (1997)).

forums or designated public forums, is 'sharply circumscribed.'" *ACLU v. City of Las Vegas,* 333 F.3d 1092, 1098 (9th Cir. 2003)(*citing Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 US 37, 45 (1983)). "Public open spaces' such as parks are distinguished from streets because their use for expressive activities rarely implicates other important governmental interests." *Long Beach Area Peace Network v. City Of Long Beach,* 574 F.3d 1011, 1022 (9th Cir. 2009).

3. **The Combination of Plaintiff's Volunteer Flyers, Signs and Conduct Constitutes Speech**

The district court only addressed whether Plaintiff's conduct alone constitutes speech, and determined Plaintiff does not intend his volunteerism "to be communicative." 1-ER-25;10-12. Plaintiff disagrees and believes the evidence establishes he clearly intends to convey an environmental protection and volunteer message before, during and post invasive removal. Plaintiff's communicative activity includes the written word - a Facebook page, volunteer flyers and signage - and conduct. 3-ER-249;11-13, 252;¶27, 285, 287, 291, 293.

Plaintiff's removal conduct includes typically being off-trail cutting plants with a long pair of pruning shears or an electric chainsaw while wearing a white hazmat suit, long rubber gloves and knee-high rubber boots for protection from poison oak and ticks. Sometimes Plaintiff wears a clear face mask and fishing waders that come up past his waist if he is working in a lot of poison oak. 3-ER-252;¶27, 285.

Plaintiff's volunteer flyer was posted on the bulletin boards at three main entrances to the Waterdog open space, and reads;

> "Volunteer with **Friends of Water Dog Preserve-Help with Habitat Restoration-** Including French Broom Removal & Revegetation Projects; If you love Water Dog Preserve and want to keep it healthy, join us to remove French Broom, one of the most aggressive and damaging invasive plant species. French Broom leaves and seeds are toxic to many animals. They form dense stands that crowd out and exclude native plants—the food source for wildlife—degrading the habitat, and pose a significant threat to biodiversity. Contact: FriendsOfWaterDog@gmail.com." 3-ER-293.

Plaintiff's volunteer flyer combines education (why invasives are environmentally destructive) with a viable outlet to be part of the solution (volunteer to help protect the environment by removing invasive plants). The flyer is visible to all entrants at the three main entrances regardless of whether Plaintiff is engaged in removal conduct at the time. 3-ER-252;¶27.

The City requires Plaintiff to display a yard sign provided by Defendant Shearer which reads, "This Project Brought To You By Belmont and Friends Of Waterdog." 3-ER-287. This sign, in conjunction with Plaintiff's equipment and conduct, clearly conveys a message that an environmental protection "Project" is being conducted by "Belmont and Friends Of Waterdog." 3-ER-289.

Understanding the message conveyed on this sign is dependent on there being removal conduct or a pile of removed invasive plants nearby; without either, this sign would be confusing and incomprehensible. 3-ER-285, 289.

Additionally, Plaintiff has a backpack he uses to haul his gear, on which he has an attached sign on the back that reads, "Friends Of Waterdog, Habitat Restoration Volunteer." 3-ER-252;¶27, 291 Plaintiff was not required to post this sign on his backpack but it clearly articulates his intention to convey a more specific environmental message beyond the message on the sign the City requires him to display that simply reads "This Project Brought To You By Belmont and Friends Of Waterdog."[14] The message conveyed on Plaintiff's backpack is inherent in the sign. The sign identifies Plaintiff, and any other volunteers, as volunteers restoring habitat. Because people typically only volunteer for things they believe are important, Plaintiff's sign implies two messages: (1) restoring habitat is important; and (2) volunteering to restore habit is important. Just as the sign compared in *Spiritual Psychic Science Church v. City of Azusa*, 39 Cal.3d 501, 511

---

[14] See *Spiritual Psychic Science Church v. City of Azusa*, 39 Cal.3d 501 (1985) wherein the court noted that a sign that read "cherries for sale at store X were picked by union workers" communicated a message beyond the bare economic interests of the buyers when compared with a sign that simply read "cherries can be purchased for a dollar a box at store X." *Id*. at 511. The "picked by union workers" sign clearly conveys a political message on a matter of public concern that the other sign doesn't. Similarly, Plaintiff's "Friends Of Waterdog, Habitat Restoration Volunteer" sign conveys an environmental message regarding habitat restoration that the City's sign doesn't. Although the California Supreme Court in *Kasky v. Nike, Inc.,* 45 P. 3d 243 (2002) disapproved of this comparison as it pertains to the definition of "commercial" versus "noncommercial" speech, Plaintiff is not citing the comparison in that context. *Id*. at 318.

(1985) which read "cherries for sale at store X were picked by union workers" implied supporting union workers is important. *Id*. at 511.

When Plaintiff is working by a trail he displays the yard sign and positions his backpack so the attached sign is readable, and stacks the cut invasive plants in a pile for pickup. 3-ER-289.

The Facebook page, volunteer flyers, signs and removal conduct combined is speech on the importance of protecting the environment by removing invasive species.

As noted above, Defendants argued that Plaintiff's removal conduct is not essential to his message and without it he "still has full access to the Open Space, can wear whatever protective gear he wants, display whatever signs he wants, and speak to whomever he wants, either in the Open Space or anywhere else, about any issues he would like. He can even still remove invasive plants on private property." 2-ER-147:19-22.

Regarding Defendants contention Plaintiff can remove invasive plants on private property instead of the open space and public streets, Plaintiff's experience has shown that private property owners are more agreeable to Plaintiff's offer to remove invasive plant knowing he does the same for the City. 3-ER-247;¶6.

Nevertheless, Plaintiff believes absent his removal conduct his message would be severely diluted, if not pointless, as promoting the idea that removing

invasive plants is important to protect the environment in the absence of conduct actually removing the invasive plants is meaningless.

Some speech is only completed, or fulfilled, and therefore effective, with conduct; especially speech that includes soliciting volunteers.

There are certain types of speech that require conduct as a component of the speech to obtain completion, or fulfilment, of the speech and make it effective. For example, a political march. The organizer advertises the march - which can include posting on the internet or posting announcement flyers on light poles - and in advertising the march some information is usually given for the purpose of the march to: (1) educate people regarding why the march is importance; and (2) encourage people who agree with the purpose to attend the march. The organizer's speech is only completed and effective by people engaging in actual marching conduct to support the political idea behind the march. Although the organizer could just stand on a sidewalk with a sign and flyers regarding their point of view it would not be as effective as a march.

Another example is "California Coastal Cleanup Day"[15] in which the environmental speech of the organizers is only completed by volunteers going to coastal areas and engaging in cleanup conduct; conduct expressive of the environmental protection ideas espoused by the organizers. In both circumstances,

---

[15] https://www.coastal.ca.gov/publiced/ccd/ccd.html

without the conduct completing the speech the speech is meaningless. The organizers of this event could have also just stood on a sidewalk holding a sign and passing out flyers with their environmental message but it would not be nearly as meaningful and effective as the cleanup day. The sight of volunteers picking up trash in a coastal area sends a more powerful, inspiring and effective environmental message than just holding a sign, passing out flyers and talking to people on a sidewalk.

In both of the above circumstances, without the conduct completing the speech the speech is meaningless. The conduct reflects and fulfills the speech, and is an absolute necessary component of the speech. Although most all speech on public issues typically ask the listener to engage in some form of conduct- e.g., contact a legislator – for certain types of speech a necessary component is often hands-on conduct.

The same is true for Plaintiff's invasive removal speech. The removal conduct is a necessary component of his speech as it not only completes the speech it also makes the speech circular. As the restoration of habitat is achieved through Plaintiff's removal conduct it: (1) allows more people to understand and believe in Plaintiff's speech regarding habitat restoration through invasive removal; and (2) helps to inspire people to engage in removal conduct as a means of expressing and achieving Plaintiff's ideas and goals of environmental protection. In circumstances

where conduct is a necessary component of speech that occurs in a public forum and is within the law, all components of the speech, absent a countervailing significant government interest, should be afforded constitutional protection.

Moreover, conduct often enhances speech. For instance, when Plaintiff organized circus demonstrations he would often have people dressed in animal costumes with chains around their legs or in cages to enhance the message Plaintiff was trying to convey to circus goers regarding the treatment of animals. 2-ER-128;¶5. Plaintiff's hands-on removal conduct enhances the written environmental protection messages on his signs and posted volunteer flyer by providing a visual example of what removal physically entails, looks like and results in, especially for people who may be considering volunteering.

In *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 US 557 (1995) our Supreme Court noted that protected expression in a parade is not limited to its banners and songs but also the conduct of the participants. *Id*. at 569. And all of the protected expression together enhances each other and constitutes what we know as a parade. *Id*. at 568. The participants of the parade could have, instead of parading, stood on the sidewalk and held their banners and sang their songs as people passed by but it would not have the same impact as when done as part of a parade. Because conduct can enhance messaging and vice versa.

For the foregoing reasons all of Plaintiff's combined speech elements

constitutes protected speech under the first Amendment.

By failing to address Plaintiff's argument that the combination of his signage

and conduct constitutes protected speech, the Court should consider Defendants

conceded this argument to Plaintiff. 2-ER-144-47. "[W]here a non-moving party

fails to address an argument raised by the moving party in the opposition brief, the

Court may consider any arguments unaddressed by the non-moving party as

waived." *Hartranft v. Encore Capital Group, Inc*., 543 F. Supp. 3d 893, 913,

(2021). *Id*. at fn. 6. *See also Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct.

1485, 1491, fn. 1 (2019), argument deemed waived where party failed to raise it in

opposition brief.

### 4. California's Constitution Provides Broader Protection for Speech

The Liberty of Speech Clause of the California Constitution, Article 1,

Section 2(a), "is more protective of speech than its federal counterpart,"[16] and

"grants broader rights to free expression than does the First Amendment to the

United States Constitution." *Fashion Valley Mall, LLC. v. National Labor*

*Relations Board*, 42 Cal. 4th 850, 857 (2007). "Unlike the First Amendment,

California's free speech clause specifies a right to freedom of speech explicitly and

---

[16] *Los Angeles Alliance for Survival v. City of Los Angeles*, 93 Cal.Rptr.2d 1, 10
(2000)(*citing Griset v. Fair Political Practices Comm.*, 8 Cal.4th 851, 866 (1994)).

not merely by implication, runs against ... private parties as well as governmental actors and expressly embrace[s] all subjects." *Beeman v. Anthem Prescription Management, LLC*, 58 Cal.4th 329, 341 (2013)(*citing Gerawan Farming, Inc. v. Lyons*, 24 Cal.4th 468, 491-493 (2000)(quotations omitted).

Since Plaintiff filed suit under both the California and Federal Constitutions the Court "should avoid adjudication of federal constitutional claims when alternative state grounds are available .... even when the alternative ground is one of state constitutional law." *Cuviello v. City of Vallejo,* 944 F. 3d 816, 826 (9th Cir. 2019)(*citing Hewitt v. Joyner*, 940 F.3d 1385, 1392 (9th Cir. 1991)).

California Code of Civil Procedure (CCP) 425.16 - California's Anti-SLAAP statute - outlines that "***conduct*** in furtherance of the exercise of the constitutional right of …free speech in connection with a public issue or an issue of public interest" is protected speech under the California Liberty Of Speech Clause. (Emphasis added). CCP 425.16 was enacted to address "a disturbing increase in lawsuits brought primarily to chill ***the valid exercise of*** the constitutional rights of freedom of speech….," and declares it "shall be construed broadly." CCP 425.16(a), (Emphasis added). The Code goes on to define the valid exercise of "constitutional rights of freedom of speech" as "any act of that person in furtherance of the person's right of … free speech under the United States Constitution or the California Constitution in connection with a public issue,"

(CCP 425.16(b)) and clarifies that an "act in furtherance of a person's right of…

free speech under the United States or California Constitution in connection with a

public issue' includes: (4) any other conduct in furtherance of the exercise of the

constitutional right of petition or the constitutional right of free speech in

connection with a public issue or an issue of public interest."  CCP 425.16(e)(4).

It has been long established in California that "a cardinal rule of statutory

construction [is] 'every statute should be construed with reference to the whole

system of law of which it is a part so that all may be harmonized and have effect.'"

*Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 216 (2010)(*citing*

*Landrum v. Superior Court*, 30 Cal.3d 1, 14 (1981)). Since the system of law CCP

425.16 is a part of is California's Liberty of Speech Clause harmonization means

California's Liberty of Speech Clause protects "any conduct in furtherance of the

exercise of the constitutional right of petition or the constitutional right of free

speech in connection with a public issue or an issue of public interest."

The court in *Center For Bio-Ethical Reform, Inc. v. The Irvine Co., LLC*, 37

Cal. App. 5th 97 (2019), used a similar analysis to assess whether the plaintiffs use

of body cameras was protected speech. The plaintiffs - "self-proclaimed

antiabortion activists" - "use[d] the body cameras to film passersby in order to

'protect [themselves] from any false accusations of harassment [and] making [of]

'disparaging remarks,' and to deter 'bad behavior.'" *Id*. at 101 and 114,

respectively. The court found that the purpose of body camera use was not conduct to facilitate "communication of their speech" and therefore was not constitutionally protected. *Id*. In other words the use of the body cameras had no connection to the anti-abortion message of plaintiffs' speech.

In contrast, Plaintiff's removal conduct is directly connected to his environmental protection message and facilitates his speech on the importance of removing invasives for environmental protection and the importance of volunteering to remove invasives.

For the foregoing reasons all of Plaintiff's combined speech elements constitutes protected speech under California law.

## 5. Plaintiff's Removal Conduct is Constitutionally Protected Expressive Conduct

The district court and Defendants only addressed whether Plaintiff's removal conduct constituted expressive speech. 1-ER-3;8-9, 24;16, 25;17 and 2-ER-144-47. The district court determined Plaintiff did not establish his public volunteerism is intended to be communicative and would be understood by the passerby to be communicative. 1-ER-25;10-16. As outlined above Plaintiff intends his volunteerism to be communicative, and Plaintiff submitted declaratory evidence, the district court ignored, which establishes passersby understand Plaintiff's removal conduct as communicative of environmental protection.

Under the First Amendment, conduct is recognized as protected speech. "The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word." *Edge v. City of Everett*, 929 F. 3d 657, 668 (9th Cir. 2019)(*citing Texas v. Johnson*, 491 US 397, 404 (1989)). "The Supreme Court refers to non-speech activity that is within the ambit of the First Amendment's protections as 'expressive conduct.'" *Id.*. (*citing Clark v. Community for Creative Non-Violence*, 468 US 288, 293 (1984)). However, "the Court has consistently rejected the view that an apparently limitless variety of conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea." *Id.*, (*citing United States v. O'Brien*, 391 U.S. 367, 376 (1968)). (Quotations omitted).

"In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 US 397, 403, 404 (1989)(*citing Spence v. Washington*, 418 US 405, 410-411 (1974)). Since *Texas v. Johnson* "the Court has clarified that a 'narrow, succinctly articulable message is not a condition of constitutional protection' because 'if confined to expressions conveying a 'particularized message' [the First Amendment] would never reach the unquestionably shielded painting of Jackson

Pollack, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll.'"

*Fort Lauderdale Food v. City of Ft. Lauderdale*, 901 F. 3d 1235, 1239 (11th Cir.

2018)(*citing Hurley v. Irish-American Gay, Lesbian and Bisexual Group of*

*Boston, Inc.*, 515 US 557, 569 (1995)(*citing Spence,* 418 U.S. at 411)). See also

*Anderson v. City Of Hermosa Beach*, 621 F.3d 1051, 1060 (9th Cir.2010). "So, 'in

determining whether conduct is expressive, we ask whether the reasonable person

would interpret it as *some* sort of message, not whether an observer would

necessarily infer a *specific* message.'" *Fort Lauderdale Food* at 1239, (*citing*

*Holloman ex rel. Holloman v. Harland*, 370 F. 3d 1252, 1270 (11th Cir. 2004)).[17]

Accordingly, Plaintiff's conduct is expressive conduct if passersby understand that

Plaintiff is involved is "some sort" of environmental protection.

As outlined above Plaintiff intends to convey an environmental protection

message with his invasive removal conduct, which also includes posted volunteer

flyers and two signs at the work site. So "[t]he critical question is whether the

explanatory speech is *necessary* for the reasonable observer to perceive a message

from the conduct." *Fort Lauderdale Food* at 1244.

---

[17] The 11th circuit court in *Fort Lauderdale Food* specifically "decline[d] the City's invitation to resurrect the *Spence* requirement that it be likely that the reasonable observer would infer a particularized message," because "[t]he Supreme Court rejected this requirement in *Hurley,* 515 U.S. at 569." *Id.* at 1245.

In deciding the likelihood the expressive conduct message would be understood the court must consider "the factual context and environment in which it was undertaken," in other words "the surrounding circumstances." *Spence v. Washington*, 418 US 405, 410-411 (1974). It is no surprise that "the circumstances surrounding an event often help set the dividing line between activity that is sufficiently expressive and similar activity that is not." *Fort Lauderdale Food*, 901 F. 3d at 1241. "Context [] differentiates the act of sitting down — ordinarily not expressive — from the sit-in by African Americans at a Louisiana library which was understood as a protest against segregation." *Id., See Brown v. Louisiana,* 383 US 131, 141-42 (1966). Signing a petition is expressive conduct but simply signing a letter is not. *John Doe No. 1 v. Reed*, 130 S.Ct. 2811, 2818 (2010).

As Plaintiff noted above, the context and environment where he is removing invasive plants is a natural open space, and on the public streets, not in his front yard. If it occurred in Plaintiff's front yard, it's likely people would think Plaintiff was only conveying the message that he was maintaining his front yard. However, Waterdog is a natural open space for which removing invasives conveys an environmental protection message.

As noted above, Plaintiff is typically off-trail cutting plants with a long pair of pruning shears or an electric chainsaw and wearing a white hazmat suit, long rubber gloves and knee-high rubber boots for protection from poison oak and ticks.

Sometimes he wears a clear face mask and fishing waders that come up past his waist if he is working in a lot of poison oak. 3-ER-252;¶27, 285. When Plaintiff is working by a trail he stacks the cut invasive plants in a pile for pickup. 3-ER-289.

Prior to Defendant Shearer's cancellation of Plaintiff's volunteer program the City had posted Plaintiff's volunteer flyers in the bulletin boards at three main entrances, which have since been removed. 3-ER-252;¶27, 293. The City of Belmont also (1) solicits open space volunteers on its website, and (2) solicits volunteers during it Parks and Recreation Commission meetings. 2-ER-129;¶7 and 3-ER-470-71. Additionally, the City, other public agencies and our Governor have issued public documents that inform people regarding the negative impacts of invasive plant species. 3-ER-352, 354, 388, 390¶7, 393;4(b), 396-97.

Based on responses Plaintiff has received from passersby while he was removing invasives, all of the above listed factors combined, and probably some unknown factors as well, enabled passersby to understand that Plaintiff's conduct conveys a message on a matter of public concern, i.e., that restoring habitat and protecting the environment is important and volunteerism is important to protect the environment. 3-ER-253;¶28.

Although, as noted, Plaintiff has signs he displays they are not always in close proximity to Plaintiff, as Broom infested areas are often quite large, requiring Plaintiff to move considerable distance away from his signs. At

other times Plaintiff's signs may not be on display at all, as when he begins removal at the bottom of a hill and works his way up the hill to the trial. During these times Plaintiff leaves his signs at the bottom of the hill, out of sight. Nevertheless, when people see Plaintiff in the off-trail environment in Waterdog wearing a hazmat suit, long rubber gloves and knee-high rubber boots and using long pruning shears or an electric chainsaw to remove plants, and stacking the cut plants in piles by the trail for pickup they understand Plaintiff is doing something to help the environment. 3-ER-253;¶29.

Just about everyone who comments or speaks to Plaintiff when he is not in proximity to his signs, or when his signs are not on display, understands he is volunteering to help the environment in some way, and most of the people commenting thank Plaintiff for his volunteer service helping Waterdog. Some people understand exactly what Plaintiff is doing and will ask if Plaintiff is removing either French broom or Scotch broom. Still others will stop to talk, to ask about or discuss, what Plaintiff is doing. -ER-253;28. This evidence directly counters the district court's determination passersby would not understand Plaintiff's message based on his conduct alone. 1-ER-25;10-16.

In *Nunez v. Davis*, 169 F. 3d 1222 (9th Cir.1999) the testimony of the court clerks and co-employees that they understood Nunez' conduct message was important evidence. *Id.* at 1226. Similarly, Plaintiff's first-hand knowledge that his message is being understood is one of the most important pieces of evidence for the Court in determining whether Plaintiff's conduct is expressive, as it removes the guesswork from the question whether "in the surrounding circumstances the likelihood was great that [Plaintiff's] message would be understood by those who viewed it." *Spence v. Washington*, 418 US 405, 410-411 (1974); "[A] narrow, succinctly articulable message is not a condition of constitutional protection…" *Anderson v. City Of Hermosa Beach*, 621 F.3d 1051 (2010)(*citing Hurley*, 515 U.S. at 569)).

That people understand Plaintiff's conduct on its own is environmental protection means his conduct possess "sufficient communicative elements to bring the First Amendment into play." *Nunez v. Davis*, 169 F. 3d 1222, 1226 (9th Cir.1999)(*citing Texas v. Johnson*, 491 U.S. 397, 404 (1989)). The evidence establishes that the "expressive component" of Plaintiff's conduct is "created by the conduct itself" and not dependent on "the speech that [sometimes] accompanies it." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 US 47, 66 (2006). "The fact that such explanatory speech is [not] necessary is strong evidence that the conduct at issue here is [] inherently expressive." *Id.*

Just as people now understand that people who are carrying a plastic bag and picking up litter on a beach are involved in environmental protection; whereas 60 years ago people may not have had the same understanding.

Mahatma Gandhi summed up his philosophy of life with the words, "My Life is my Message."[18] Ghandi's life was his example of his message regarding how he thought people should live. Similarly, Plaintiff's volunteer removal conduct is his message of environmental protection, as it's his example of the environmental action he wants others to take.

### a. City of Belmont's General Plan Outlines Removing Invasive Species Is Conduct Expressive of Environmental Protection

The City of Belmont's General Plan, Conservation Element, discusses the importance of the open spaces within its borders as (1) "part of the regional open space network on the San Francisco Peninsula" and (2) "play[ing] important roles in… ecological functions, and other environmental conservation efforts." 3-ER-352. The General Plan explains that "as part of the effort to preserve and maintain the open spaces" the City of Belmont needs to "manage invasive species." *Id*. The only specific action in the General Plan to address managing invasive species is "Action 5.2-2a" which mandates the City "encourage volunteers to … remove invasive species." 3-ER-465;Action 5.2-2a. There is no dispute the act of removing

---

[18] https://pibindia.wordpress.com/2016/09/29/mahatma-gandhi-my-life-is-my-message/

invasive plants is conduct. The General Plan specifically correlates the conduct of removing invasive plants with the idea of preservation of the open space. Because the General Plan directly states that removing invasive species is necessary to protect and preserve the open space it would be incongruent to think volunteer conduct removing invasive species in the open space is anything but expressive of the idea of environmental preservation and protection.

So, when people, like Plaintiff, volunteer to remove invasive species their conduct, as outlined in the General Plan, is inherently expressive conduct of the idea that open space protection and preservation is important.

As outlined above the City of Belmont's General Plan is a foundational land management document, with "statutory intent"[19] and is "infused with the force of law." *Orange Citizens for Parks & Recreation v. Superior Court*, 2 Cal.5th 141, 153 (2016). Therefore, the City of Belmont has no legal basis for arguing that invasive plant removal conduct, such as Plaintiff's, is not expressive conduct of environmental preservation, when its General Plan outlines that this conduct is expressive of environmental preservation.

For the foregoing reasons Plaintiff's volunteer activity is constitutionally-protected expressive conduct.

6. **California Courts Also Recognize Conduct as Speech**.

---

[19] 3-ER-456

In *Los Angeles Alliance for Survival v. City of Los Angeles*, 93 Cal.Rptr.2d 1 (2000), the State Supreme Court reviewed a regulation on solicitation and recognized that solicitation is free speech, (*Id.* at 4), and solicitation includes expressive conduct "using the spoken, written, or printed word, ***or bodily gestures***, signs or other means with the purpose of obtaining an immediate donation of money or other thing of value...." *Id*. at 7. (Emphasis added).[20] Additionally, as outlined above, California Code of Civil Procedure Section 425.16, recognizes that "conduct in furtherance of the exercise of… the constitutional right of free speech in connection with a public issue or an issue of public interest" is constitutionally protected. See Code of Civ. Proc. Section 425.16(a)(b)(e) .

As previously discussed, under California law, conduct that facilitates "communication of speech" is constitutionally protected. See *Center For Bio-Ethical Reform, Inc. v. The Irvine Co., LLC*, 37 Cal. App. 5th 97 (2019), in which the court found that the purpose of body cameras worn by anti-abortion mall demonstrators was not conduct to facilitate "communication of their speech" and therefore was not constitutionally protected. *Id*. at 114. In other words, the use of

---

[20] Although Plaintiff could not identify much California-specific caselaw addressing expressive conduct, the State Supreme Court in *People v. Teresinski*, 30 Cal.3d 822 (1982) dictated that in the absence of State caselaw on a constitutional issue "decisions of the United States Supreme Court… ought to be followed unless persuasive reasons are presented for taking a different course." *Id*. at 836. Accordingly, in the absence of state caselaw on expressive conduct the Court should rely on Supreme Court decisions.

body cameras had no relation to the demonstrators' anti-abortion message. Plaintiff's removal conduct is directly related to, and facilitates communication on, his speech.

As outlined above, Plaintiff's speech serves to educate people regarding the value of removing invasives and restoring habitat to conserve the environment, and to get people to care enough to address the issue, including by volunteering with Plaintiff to help remove invasives.

When people stop to talk, based solely on Plaintiff's conduct, that is the desired response when engaging in free speech activity, as it allows for further education on the issue, which facilitates communication on Plaintiff's speech.[21] 2-ER-129;¶8 and 3-ER-253;¶28. Plaintiff's speech includes encouraging people to volunteer in removal of invasives. As opposed to just standing with a sign Plaintiff can demonstrate removal of invasive plants and further explain how it restores habitat by showing which plants are invasive and how removal allows native plants to rebound. It's also a demonstration of the volunteer conduct Plaintiff is asking others to engage in.

---

[21]Plaintiff has been involved in, and has been organizing, animal rights and environmental activism events since 1986, and is very knowledgeable regarding the desired results of such activism, which include wanting people to want to learn more about the issue by stopping to talk about the issue, and then, hopefully, deciding to get involved. 3-ER-247;¶3, 253;¶28.

### E. Plaintiff's Constitutionally Protected Rights Include a First Amendment Right to Acquire and Gather Information and a Fourteenth Amendment Right of Liberty to Acquire Knowledge

"James Madison wrote in 1822, 'a popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or, perhaps both.' *Leigh v. Salazar*, 677 F. 3d 892, 897 (9th Cir. 2012)(*citing* 9 WRITINGS OF JAMES MADISON 103 (G. Hunt ed. 1910). Based on that premise, it has long been recognized that without some protection for acquiring and gathering information "freedom of [speech] could be eviscerated." *Branzburg v. Hayes*, 408 US 665, 681 (1972). Accordingly, "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc*., 131 S.Ct. 2653, 2667 (2011)(*citing Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001)).

Just as the conception of liberty under the Fourteenth Amendment is coextensive with the right of free speech,[22] Plaintiff's First Amendment right to acquire and gather information is coextensive with his Fourteenth Amendment liberty right to acquire knowledge. "[A]cquir[ing] useful knowledge" is a liberty interest "guaranteed by the Fourteenth Amendment." *Board of Regents of State Colleges v. Roth*, 408 US 564, 572 (1972).

---

[22] *Stromberg v. California*, 283 U.S. 359, 368 (1931)(*citing Gitlow v. New York*, 268 U.S. 652, 666 (1925)).

The importance of First and Fourteenth Amendment protections for gathering information and acquiring knowledge - which are often one and the same - cannot be overstated, as many of our First Amendment principles would be meaningless without protection for information gathering. Without protection for gathering information the "unfettered interchange of ideas for the bringing about of political and social changes desired by the people,"[23] would be fettered, as ideas could not be properly formulated. Our "profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open" would be meaningless, as acquiring facts and information is essential to such debates being "uninhibited, robust, and wide-open." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982)(citing *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964)). "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell*, 131 S.Ct. at 2667.

Plaintiff's speech is concerning public affairs, and such speech is: (1) "more than self-expression; it is the essence of self-government"; (2) "occupies the highest rung of the hierarchy of First Amendment values"; and (3) "is entitled to special protection." *Snyder v. Phelps,* 131 S. Ct. 1207, 1215 (2011)(*citing Garrison*

---

[23] *Galvin v. Hay*, 361 F.3d 1134, 1145 (9th Cir. 2004)(*citing New York Times v. Sullivan*, 376 U.S. 254, 269 (1964)

*v. Louisiana*, 379 U.S. 64, 74-75 (1964) *and Connick v. Meyers*, 461 U.S. 138, 145 (1983), respectively).

Through his invasive plant removal conduct Plaintiff gains valuable first-hand experience and knowledge regarding the effects of restoring habitat by removing invasive species and identifying the most effective means, including the time of year, of removing different invasive plant species. This knowledge also includes whether or to what extent, if any, invasive plants like French Broom return to a cleared infested area year after year. This type of first-hand knowledge informs Plaintiff regarding the level of resiliency of invasive plant seeds - like French broom - in the seed bank to continue to propagate after mature plants are removed, and the ability of the habitat to restore itself in the absence of an invasive plant infestation. 3-ER-247;¶6. This knowledge is invaluable to restore native habitat, and increase biodiversity, by removing invasive plant species such as French Broom. Plaintiff shares his gained knowledge with other groups, individuals and government officials including, BroomBusters, Save San Francisco Bay, Friends of Edgewood, California State Parks Foundation, Salmon Protection and Watershed Network (SPAWN), California Invasive Plant Council, FaceBook groups California Invasive Plants and California Native Plant Society, and the City of Belmont's City Council, Parks and Recreation Department Director Shearer and Parks and Recreation Commissioners. 3-ER-328;¶¶64-67.

This is an important public issue that, based on increasing awareness of the negative impact invasive plants have on biodiversity and on wildfire issues, first hand expertise is needed for the debate to be "uninhibited, robust and wide-open." Plaintiff's dissemination of this knowledge is protected free speech, and his acquisition of this knowledge, which was only made possible through his invasive plant removal program, should also be considered protected speech.

It's well established that the right to gather information "from any source by means *within the law*" has been protected by the First Amendment. *Branzburg* at 861, (emphasis added). Not only is Plaintiff's conduct wholly within the law when he's gathering information from invasive plant removal, his removal is aligned with the Goals, Policies and Actions mandated by the City of Belmont's General Plan to preserve and maintain the open space. 3-ER-352, 465;Action 5.2-2a. Additionally, Plaintiff's volunteer removal activity occurs in a public forum and, just as people who pick up trash in public parks, is providing a recognized community service, for which Defendant Shearer thanked him for "improving the open space." 3-ER-308. Plaintiff is also reducing the risk of wildfire. 3-ER-360, 363, 388. Under such law-abiding, community-service circumstances there is no reason that Plaintiff's information gathering by removing invasive species should not be fully protected under the First Amendment.

### F. Protection of Plaintiff's Information Gathering Is Also Provided by California's Liberty Of Speech Clause

As outlined above California Code of Civil Procedure Section 425.16, recognizes that "conduct in furtherance of the exercise of… the constitutional right of free speech in connection with a public issue or an issue of public interest" is constitutionally protected under California's Liberty of Speech Clause.

As noted above, the California appellate court in *Center For Bio-Ethical Reform, Inc. v. The Irvine Co., LLC*, 37 Cal. App. 5th 97 (2019) recognized that conduct that facilitates speech is constitutionally protected; the court found that the purpose of body cameras worn by anti-abortion mall demonstrators was not conduct to facilitate "communication of their speech" on abortion and therefore was not constitutionally protected. *Id*. at 114. Plaintiff's removal conduct does facilitate communication on his speech, as it provides him with information and concrete evidence regarding invasive plant removal to share with members of the public, decision makers and others.

Accordingly, Plaintiff's removal conduct is in furtherance of his speech, as it makes him more knowledgeable on the public issue, and also helps to facilitate "communication of [his] speech" for the same reason.

### G. Defendant Shearer's Prohibition on Plaintiff's Free Speech Acitivity Is UnConstitutional

If the Court finds Plaintiff's removal conduct alone, removal conduct combined with signs and volunteer flyers, and/or removal conduct as gathering and

acquiring information constitutes protected speech then the time, place and manner

analysis applies. If the Court finds Plaintiff's removal conduct is

noncommunicative then the *O'Brien* test applies.

### a. Time, Place and Manner Analysis

Reasonable restrictions on the time, place, or manner of protected speech are

allowed, "provided the restrictions 'are justified without reference to the content of

the regulated speech, that they are narrowly tailored to serve a significant

governmental interest, and that they leave open ample alternative channels for

communication of the information.'" *Comite de Jornaleros v. City of Redondo

Beach*, 657 F. 3d 936, 945 (9th Cir. 2011)(*citing Ward v. Rock Against Racism*,

491 U.S. 781, 791 (1989)). The standard for evaluating a reasonable time, place,

and manner restriction is the same under California and Federal law." *Cuviello v.

City of Vallejo,* 944 F. 3d 816, 827 (9th Cir. 2019)(*citing Dulaney v. Municipal

Court*, 520 P. 2d 1, 6 (1974)). "The government bears the burden of justifying [the]

restriction"[24] and "[t]he failure to satisfy any single prong of this test invalidates

the requirement."*Kuba v. 1-A Agricultural Association*, 387 F.3d 850, 858 (9th Cir.

2004)(*citing Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994)).

---

[24] *Berger v. City of Seattle,* 569 F.3d 1029, 1048 (9th Cir. 2009)(*citing Kuba v. 1-A
Agricultural Association*, 387 F.3d 850, 859 (9th Cir. 2004)).

Plaintiff does not argue the restriction on his speech is content-based. He does contend it is not narrowly tailored to "serve a significant governmental interest." Defendants' proffered reason for cancelling Plaintiff's volunteer program was public safety, which the evidence establishes was a pretext for retaliating against Plaintiff.

On March 2, 2023, over three months after Plaintiff's volunteer program was cancelled and only after Plaintiff filed a lawsuit and motion for a TRO and preliminary injunction, Defendants submitted a declaration from Defendant Shearer proffering a safety concern as justification for the cancellation of Plaintiff's volunteer program. Defendant Shearer declared the Parks and Recreation Department was concerned about potential safety issues presented by volunteer activities in the Waterdog Open Space and needed time to consider any assessment and/or recommendations from consultants regarding safety and management of volunteer activities in Waterdog. 2-ER-156;¶¶11 and 12. Although Shearer also stated in her declaration it was her belief the volunteer activities could resume after the City had time to consider any safety assessment and/or recommendations she gave no indication of a timeline. *Id*., ¶12.

Common sense dictates that a safety concern is an important or substantial interest. However, "[p]ublic safety—like public interest—is much too broad a concept to serve as an effective constraint on law enforcement decisions that may

infringe First Amendment rights." *Doe v. Harris*, 772 F. 3d 563, 580 (9th Cir. 2014). Defendants' vague unspecified safety issue "plac[es] unbridled discretion in the hands of a government official or agency" to restrict speech in the open space. *Id.*, (*citing City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750,757 (1988)). Moreover, "a governmental body seeking to sustain a restriction . . . must demonstrate that the harms it recites are real . . . ." *Berger v. City of Seattle,* 569 F.3d 1029, 1049 (9th Cir. 2009)(*citing Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)). Scrutiny of Defendants' proffered reason reveals it is pretextual.

Firstly, Plaintiff's removal efforts extend beyond Waterdog. 3-ER-308;#5 and 2-ER-128;¶2. If Defendants' true reason for cancelling Plaintiff's volunteer activity in Waterdog is because of some unspecified "safety issue" in the open space then Defendants had no reason for not allowing Plaintiff to remove broom in areas outside Waterdog, "on Ralston [Ave.]." Secondly, if Defendant Shearer's understanding was that Plaintiff's and volunteer trail maintenance group - Waterdog Trailkeeper's, (hereinafter "Trailkeepers") - volunteer activities "could resume" after the assessment then why did Defendants remove all of Plaintiff's volunteer flyers in their Waterdog bulletin boards and not remove Trailkeepers' flyers? 3-ER-252;¶27, 293, 295, (ER 293 and 295 are photos of before and after removal of Plaintiff's volunteer flyers). Thirdly, at the time of Shearer's Declaration, the Waterdog open space was fully open for public use - including

dog walking, hiking and mountain biking - with the exception of Chaparral trail. 2-ER-128;¶3, 131. Common sense and logic dictate if it's safe for people to use the trails for hiking, dog walking and mountain biking it's safe for Plaintiff to remove invasive plants. In fact, Plaintiff had to sign a waiver of liability in order to volunteer. 2-ER-128;¶4, 133. Fourthly, if Defendant Shearer was conducting an assessment on "potential safety issues by volunteer activities" wouldn't she need to witness how volunteers are conducting their activities to determine "potential safety issues?" Lastly, if Waterdog was closed to volunteer activities why was the City still soliciting open space volunteers on its website. 3-ER-470-471, 473.

Additionally, based on Shearer's Declaration Plaintiff filed a California Public Records Act (CPRA) request for all documents relating to the City of Belmont's consultation with an environmental consultant regarding potential safety issues with volunteer removal of non-native plant species and trail maintenance in Waterdog Open Space within the last year. 2-ER-42. Not one of the City of Belmont's CPRA responsive documents remotely mentions anything about a safety assessment or safety in general regarding volunteer activities in Waterdog Open Space. 2-ER-47-55. These documents offer further support for Plaintiff's argument that Defendants' safety concern was a pretext for retaliating against him.

If the Court determines Defendant Shearer's safety concern was a valid concern then Plaintiff contends the cancellation of his program was not narrowly tailored.

"[A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests." *Comite de Jornaleros* at 947, (*citing Ward* 491 U.S. at 798)). "The regulation 'need not be the least restrictive or least intrusive means of' achieving the government's goals, but it may not 'burden substantially more speech than is necessary.'" *Id.* "Put another way, the regulation must 'focus[ ] on the source of the evils the city seeks to eliminate ... and eliminate[ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.'" *Id., (citing Ward* 491 U.S. at 799 n. 7)).

The fact that Plaintiff's removal efforts outside of the open space were cancelled along with his removal efforts in the open space is clear evidence Shearer's prohibition on Plaintiff's volunteerism was not narrowly tailored to her safety concern regarding volunteerism in the open space. 2-ER-156;¶¶11 and 12.

For the foregoing reasons Defendant Shearer's cancellation of Plaintiff's volunteer program did not serve a significant government interest nor was it narrowly tailored if her stated interest is considered valid.

### b. The *O'Brien* Analysis

If the Court finds Plaintiff's removal conduct is noncommunicative then the government restriction is subject to the *United States v. O'Brien*, 391 U.S. 367 (1968) analysis: "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Texas v. Johnson*, 491 US 397, 407 (1989)(*citing O'Brien*, 391 U.S. at 376)). "[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien* at 377. The *O'Brien* test "in the last analysis is little, if any, different from the standard applied to time, place, or manner restrictions." *Texas,* 491 U.S. at 407.

With regards to prong 1 of the *O'Brie*n analysis, Plaintiff does not dispute the City of Belmont would be within its constitutional power to restrict his removal conduct pursuant to a valid concern. With regards to prong 2, Plaintiff disputes that the cancellation of his volunteer program furthered a legitimate concern for safety. As outlined above in Plaintiff's time, place and manner analysis, Defendant Shearer's proffered "safety" concern is pretextual and therefore cannot be "an

important or substantial governmental interest." If Defendant Shearer's "asserted interest is simply not implicated on these facts… the interest drops out of the picture." *Texas,* 491 U.S. at 403, (*citing Spence v. Washington*, 418 US 405, 414, n.8 (1974); if the government interest cannot be supported by the record the *O'Brien* analysis is "inapplicable.").

*Assuming arguendo* Defendants had a valid safety concern, their cancellation of the program still fails the fourth prong of the *O'Brien* analysis as the restriction is supposed to be "incidental" and "no greater than is essential to the furtherance of the government interest." *See O'Brien*, 391 U.S. at 377. Defendant Shearer's cancellation of Plaintiff's removal program was not incidental as his entire program was cancelled. If there was a valid safety concern in the open space Plaintiff could have still removed invasive plants on Ralston Avenue, where no safety concern was proffered. 2-ER-128;¶2 and 3-ER-308;#5. This fact also makes Defendant Shearer's restriction "greater than is essential to the furtherance of the government interest."

Additionally, given the open space was open for general public usage, there was no reason to prohibit Plaintiff from all of his removal activity, again making the cancellation "greater than is essential to the furtherance of the government interest." 2-ER-131.

Accordingly, under *O'Brien* analysis Defendants' restriction on Plaintiff's removal conduct, based on their proffered safety reason, is an unconstitutional restriction.

For the foregoing reasons if the Court determines Plaintiff's removal activity is constitutionally protected speech it should reverse the district court and grant Plaintiff's preliminary injunction request.

## VII. CONCLUSION

For the foregoing reasons Plaintiff respectfully asks the Court to overturn the court's order denying his motion for preliminary injunction.


DATED: September 26, 2023

By:   */s/Joseph Cuviello*
JOSEPH CUVIELLO
Plaintiff-Appellant In Pro Se

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-16135

I am the attorney or self-represented party.

**This brief contains** 13,970 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/Joseph Cuviello **Date** 9-26-23

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*